**CORRECTED**

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-408V
UNPUBLISHED

| | |
|---|---|
| CHARLES OLSON,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: January 27, 2023<br><br>Special Processing Unit (SPU);<br>Entitlement to Compensation; Ruling<br>on the Record; Findings of Fact;<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA); |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, *for petitioner.*

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, *for respondent.*

### RULING ON ENTITLEMENT [1]

On January 8, 2021, Charles Olson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 24, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters, and the parties have now briefed Petitioner's entitlement to damages. For the reasons described below I find in Petitioner's favor.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.      **Relevant Procedural History**

Petitioner filed this claim on January 8, 2021. ECF No. 1. Petitioner filed an amended petition, medical records, and a statement of completion on April 19, 2021. ECF Nos. 6, 7, 9-11. On September 21, 2021, Respondent's counsel filed a status report stating that he conducted a preliminary review of the case and did not identify any medical records that appeared to be missing. ECF No. 19. Respondent's counsel did note that onset might prove to be an issue, however.

On September 29, 2021, based on Respondent's counsel's assessment, Petitioner's evidence, and my own review of this case, I determined it would be appropriate for this case to remain in SPU. ECF No. 20. Further, I ordered Petitioner to begin preparing a demand. In a scheduling order issued on March 10, 2022, I stated that if this case remained unreviewed by June 9, 2022, Petitioner would be allowed to file a motion for a ruling on the record. ECF No. 25. Respondent filed a status report on June 9, 2022, requesting until July 11, 2022, to file a status report indicating how he intended to proceed in this case. ECF No. 27. I then ordered Petitioner to file a motion for a ruling on the record by July 15, 2022.

Petitioner filed a motion for a ruling on the record and brief in support of damages on July 15, 2022. Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Mot."), ECF No. 30. Petitioner argues therein that he is entitled to compensation (*id.* at 14-16) and requests an award of $130,000.00 for actual pain and suffering. *Id*. at 16-29.

Respondent filed a response on July 29, 2022. Respondent's Rule 4(c) Report and Response to Petitioner's Motion for a Ruling on the Record ("Opp."), ECF No. 31. Respondent argues that Petitioner has failed to meet the requirements of a Table claim, and in particular that there is an alternative source for Petitioner's left shoulder pain. Opp. at 8-9. Respondent objected to responding to Petitioner's damages claim at this juncture, arguing it is premature. *Id.* at 1.

Petitioner filed a reply on August 4, 2022, addressing Respondent's arguments. Petitioner's Reply Brief in Support of Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Reply"), ECF No. 32. Petitioner also requested oral argument. *Id.* At 2. Petitioner filed a second reply on November 7, 2022, detailing two Medicaid liens associated with Petitioner's care. Petitioner's Second Reply Brief in Support of Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Surreply"). Petitioner also requested that the Court make a ruling on damages after entitlement has been decided. *Id.* At 1-2.

## II.     Petitioner's Medical Records

Petitioner received a flu vaccine on September 24, 2019 in his left shoulder. Ex. 1 at 5, 37.

Approximately three weeks later, on October 17, 2019, Petitioner complained to Scott Weldon and Franklin Park Urgent Care Center of left arm pain that "started after flu shot". Ex. 3 at 5. Petitioner rated his pain as eight out of ten. X-rays were taken, which were unremarkable. *Id.* at 7.

Petitioner next complained of shoulder pain to Jordon Snell, D.O., on November 15, 2019, at Chehalis Family Medicine. Ex. 1 at 37. Petitioner reported that he had a flu shot on September 24, 2019, and "has had persistent arm pain since then." He also stated that he "had a fall about 2 weeks ago and caught himself on outstretched left arm." *Id.* Dr. Snell expressed the view that Petitioner's left shoulder pain was "multifactorial, with some residual pain from injection, and new pain approximately since fall." *Id.* at 36.

On December 4, 2019, Petitioner was seen for a physical therapy evaluation. Ex. 4 at 75. The mechanism of injury was described as "following flu injection on 9/24/2019". *Id.* Petitioner also stated that the pain began "a few hours after the [flu] injection, and continued to persist…." *Id.* at 90.[3] At that time, he rated his pain as 5-7 out of 10. *Id.* at 77.

Petitioner was next seen for physical therapy on December 11, 2019. Ex. 4 at 73. Petitioner stated that his pain began a few hours after the [flu] injection, and continued to persist…." *Id.* At 73.

Petitioner was seen by Dr. Danielson on December 17, 2019, for chronic low back pain. Ex. 5 at 11. At that time, Petitioner also inquired about "some recent persisting left lateral shoulder pain" that began "after a prior [] flu shot." *Id.* Petitioner further stated there was no significant trauma other than his injection. *Id.*

On December 19, 2019, Petitioner again saw Dr. Snell. Ex. 1 at 73. At that time, Petitioner reported persistent left arm pain that "perhaps mildly improved after starting PT." *Id.* He reported mostly aching pain at that time.

Petitioner saw Dr. Danielson again on March 17, 2020, for chronic low back pain and left shoulder pain. Ex. 5 at 16. Petitioner's shoulder pain was "felt to be consistent

---

[3] The physical therapist also noted that Petitioner's primary care physician stated that Petitioner "had a fall onto his L shoulder, which [Petitioner] did not mention to P[hysical] T[herapist]." Ex. 4 at 90.

with a potential shoulder impingement syndrome." *Id.* Dr. Danielson noted that Petitioner was "[g]uarding" his left shoulder, and that he had tried limited sleeping on his left side. *Id.* An examination indicated that Petitioner had reduced range of motion, and his left shoulder exhibited some tenderness in the subacromial region. *Id.* at 17-18.

Petitioner was seen for a telehealth visit on March 27, 2020. Ex. 1 at 92. Petitioner reported his arm pain was persistent, and he was "struggling with sleep." However, his baseline pain while awake was improving. *Id.* Petitioner reported that he was seeing a physical medicine specialist for his left shoulder pain and his evaluation was "consistent with shoulder impingement, though the possibility of SIRVA" remained. *Id.* at 92.

On May 14, 2020, Petitioner returned to physical therapy. Ex. 6 at 9. He described his injury as left shoulder pain "that began following the flu injection performed on 9/24/2019." *Id.* The physical therapist noted that Petitioner was evaluated in December of 2019 but "never returned to clinic due to traveling out of town." *Id.* Over the past several months, Petitioner reported his shoulder pain has continued without improvement. Petitioner rated his pain as five out of ten, and that he experienced pain 51-75% of the time. *Id.* at 13.

Petitioner attended ten physical therapy sessions between May 14, 2020, and July 27, 2020. Ex. 6 at 55, 200. During that time, his pain levels decreased, with repeated reports of levels as low as zero out of ten prior to assessment, and three-to-four out of ten during assessment. *Id.* at 103 (record from June 5, 2020 rating his pain as 0/10 prior to assessment); *id.* at 147 (record from June 19, 2020 rating his pain as 0/10 prior to assessment and 3/10 during assessment); *id.* at 200 (record from July 18, 2020 rating his pain as 1/10 prior to assessment and 4/10 during assessment). However, he continued to demonstrate weakness and reported ongoing shoulder pain as late as July 27, 2020. *Id.* at 237.

Petitioner had a left shoulder MRI on August 19, 2020. Ex. 9 at 67-68. The MRI showed tendinosis with partial thickness tear of the supraspinatus tendon, mild arthritis, and bursitis. *Id.*

On October 12, 2020, Petitioner saw PA Lukas Steffan for left shoulder pain. Petitioner stated that his pain started the day after he got a flu shot a year earlier. Ex. 9 at 79. He was assessed with arthritis of the left acromioclavicular joint, bursitis, and a partial left rotator cuff tear. *Id.* at 69. At that time, he received a steroid injection. *Id.* Petitioner had a second steroid injection on November 4, 2020. *Id.* at 72.

4

Petitioner next complained of shoulder pain on January 29, 2021. Ex. 9 at 83. Petitioner reported that he had experienced about three weeks of relief from the steroid injection, but the pain had since returned. *Id.* Petitioner also reported that he was improving, and described the severity of his problem as mild to moderate. *Id.*

On February 9, 2021, Petitioner met with Dr. Christopher Hawkins to discuss his shoulder pain. At that time, Petitioner complained of difficulty sleeping due to pain, and occasional pain with reaching and/or lifting away from his body. Ex. 9 at 90. Petitioner indicated he wanted to proceed with surgical treatment. *Id*.

Petitioner underwent left shoulder arthroscopic surgery on March 2, 2021. The procedures included extensive debridement, a subacromial bursectomy and decompression with resection of the coracoacromial ligament. Ex. 9 at 106-07.

Petitioner subsequently attended twelve physical therapy sessions between March 3, 2021 and April 23, 2021. At the time of his discharge, he rated his pain as 1 out of 10, but continued to exhibit some weakness. Ex. 11 at 15-16. He was assessed with "essentially…normal range of motion and good strength except external rotation" which was "still somewhat weak." *Id.* at 16.

### III.     Affidavit Evidence

Petitioner submitted an affidavit in support of his claim on April 5, 2021. Ex. 2. Petitioner states that a few hours after his flu vaccine on September 24, 2019, he began to experience pain and discomfort in his shoulder. *Id.* at 2. Additionally, Petitioner described his course of treatment and how his injury impacted his daily life.

### IV.     Parties' Arguments

Petitioner requests that I issue a ruling finding that he is entitled to compensation in this case. Mot. at 14-16. He avers that onset of his shoulder pain was within 48 hours of the vaccination, and he experienced decreased range of motion thereafter, substantiating his SIRVA Table claim. *Id.* at 16. Respondent argues that Petitioner has failed to show he suffered a Table claim because his treating physician identified an alternative source of his left shoulder pain -- specifically a fall in early November of 2019. Opp. at 9.

### V.     Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### 1. Petitioner Had no Prior Left Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and I find that he has demonstrated a lack of history of pain, inflammation, or dysfunction of his left shoulder that would explain his symptoms. *See* Ex. 3 at 5 (stating that Petitioner's pain "started after flu shot").

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of his Vaccination

Respondent has not contested that onset of Petitioner's pain was within 48 hours of his vaccination. Further, the aforementioned medical records support the conclusion that Petitioner consistently reported to treaters onset close-in-time to vaccination, and that he sought treatment within approximately three weeks of his September 2019 vaccination, at which time he maintained he had experienced pain since the vaccination. Ex. 3 at 5 (stating in an October 17, 2019 record that Petitioner's pain "started after flu shot"); Ex. 1 at 37 (stating in a November 15, 2019 record that Petitioner "has had persistent arm pain since a flu shot").

### 3. Petitioner's Pain was Limited to his Left Shoulder

I also find that there is a preponderance of evidence that Petitioner's pain was limited to his left shoulder. Respondent does not contest this aspect of Petitioner's claim, and the records consistently report shoulder pain, weakness, and loss of range of motion in his left shoulder, which is consistent with other SIRVA cases. Petitioner's medical procedures were also limited to his left shoulder. Accordingly, preponderant evidence establishes that Petitioner's pain was limited to his left shoulder.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent argues that Petitioner Petitioner's treating physician identified a fall in early November 2019 as a contributing factor. Opp. at 9. Respondent notes that Dr. Snell indicated Petitioner has had pain since that fall, and attributed his shoulder pain to a combination of the injection and the fall. Ex. 1 at 36-37.

Evidence of this post-vaccination accident is preponderantly established by the record. Ex. 1 at 37. However, Petitioner correctly notes that he first complained of shoulder pain *prior* to the accident, on October 17, 2019, and also attributed his shoulder

8

pain to the September flu vaccination. Ex. 3 at 5. Indeed, he consistently reported pain beginning close in time to vaccination but prior to the accident. *See*, *e.g.*, Ex. 4 at 75 (stating Petitioner's pain began following a flu injection on September 24, 2019); Ex. 9 at 79 (stating Petitioner's pain started the day after he got a flu shot).

While it is true that Dr. Snell indicated Petitioner's shoulder pain may be "multifactorial" and may have contributed to his pain or injury, it does not preclude Petitioner from suffering a SIRVA or defeat his claim. The multifactorial aspect is more likely relevant to the ultimate value of this claim, but it does not defeat it (unless it could be shown to be the *more likely* cause of Petitioner's injury – which the record does not establish).

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in his left shoulder on September 24, 2019, in the United States. Ex. 5 at 37; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Ex. 2 at 2; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's left shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). I have also found that there is no other condition that which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of his SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). The records demonstrate, and Respondent does not contest, that Petitioner suffered the residual effects of his shoulder injury for more than six months and underwent surgical intervention. Ex. 9 at 106-07 (records of Petitioner's arthroscopic surgery). Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## VI.     Damages

Petitioner also briefed damages, and requests $130,000.00 for pain and suffering. Mot. At 1, 16-29; Reply at 9; Surreply at 1-2. Respondent did not brief damages, stating that it is premature and that the non-PDF order specified entitlement be addressed. Opp. At 1.

Respondent has unilaterally opted to ignore my order about briefing damages – a questionable stance that in future cases may well result in a decision on damages awarding all, or most, of what a claimant requests, based solely on my own determination of what is reasonable and without any consideration of Respondent's input. However, I decline to decide damages at this time, and instead direct the parties to discuss whether damages can be decided informally. If they cannot come to an agreement within 30 days, Respondent will be ordered to submit damages briefing addressing Petitioner's arguments – and to do so in a relatively short timeframe.

## VII.    Conclusion

In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.

Accordingly, the parties shall file a Joint Status Report by **Friday, February 24, 2023**, indicating whether settlement discussions are productive. If not, Respondent shall file, by no later than March 10, 2023, a brief addressing damages.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
